IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS COLEMAN, AARON FILLMORE, JEROME JONES, individually and on behalf of a class of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 15 C 5596 |
| v. | ) ) | |
| GLADYSE C. TAYLOR, Acting Director of the Illinois Department of Corrections, | ) ) ) | Hon. James B. Zagel |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant GLADYSE C. TAYLOR, by and through her attorney LISA MADIGAN, Attorney General of Illinois, submits the following Memorandum of Law in Support of Her Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b):

### INTRODUCTION

Plaintiffs' Complaint purports to be a class action seeking to prevent the use of "extreme isolation" by the Illinois Department of Corrections ("IDOC") for both administrative and punitive purposes. However, inmates in prison have no liberty interest in avoiding segregation. Further, the actual allegations set forth therein use varied terms such as "extreme isolation," "segregation," and "solitary confinement" interchangeably, without defining or explaining these terms. Despite the fact that the plaintiffs complain of "isolation, the allegations as to each named Defendant do not identify inmates who are actually housed in a cell by themselves, "deprived of meaningful social interaction." To the contrary, the named Plaintiffs have cellmates and interact regularly with security and medical staff. The alleged constitutional deprivations set forth in the Complaint are varied and myriad, but not specifically related to being kept in "extreme

1

isolation." Departing from their claim of "isolation," the named Plaintiffs raise issues of cleanliness and pest control, failure to be provided with individual medical care, and failure of due process. These are individual claims at best, and do not state a cause of action for a class. Accordingly, Plaintiffs' Complaint should be dismissed for failure to state a claim. To the extent that it is possible to determine what Plaintiffs are complaining about, their claims should be severed pursuant to *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## STATEMENT OF FACTS

### A.  General Allegations.

In its opening paragraphs, the Complaint purports to seek class certification for all IDOC inmates who are "subjected to harmful punitive isolation sentences and who are or who will be confined in Illinois prisons." Plaintiffs' Class Action Complaint for Declaratory and Injunctive Relief, Docket No. 1 (hereinafter "Compl." or "Complaint") at ¶ 1. Plaintiffs also conclude, without providing any factual basis, that within the IDOC the terms "solitary confinement, disciplinary segregation, investigative status, and administrative detention" are all interchangeable terms meaning "extreme isolation." Compl. at ¶1. Plaintiffs then allege that since the IDOC housed approximately 2,300 inmates in one form of segregation or another as of June 30, 2013, that all of these inmates were being held in "extreme isolation." Compl. at ¶ 2.

Plaintiffs allege that inmates in "extreme isolation" are housed in "tiny, often windowless" cells, and "deprived of meaningful social interaction and any ability to engage in any meaningful or productive physical or mental activity." Compl. at ¶ 3. Plaintiffs allege that keeping Plaintiff's in "solitary confinement" is bad for their health and otherwise damaging. Compl. at ¶ 14. Plaintiffs cite to a number of articles, as well as non-binding standards and practices that discuss the dangers of "extreme isolation." Compl. at ¶¶ 14-19. However, at no

2

point do Plaintiffs define, identify, or allege what Plaintiffs, or the articles, standards, and practices mean by "extreme isolation."

The Complaint identifies certain IDOC policies and procedures related to discipline and punishment within IDOC facilities. Compl. at ¶¶22-40. Plaintiffs argue that the disciplinary hearings themselves are "extremely limited." Compl. at ¶ 28.[1] Plaintiffs identify certain infractions that result in "segregation" time, and again extrapolate, without explanation or defining their own terms, that "segregation," "administrative detention" and "extreme isolation" are the same thing. Compl. at ¶28. Further, the Complaint consists of allegations of three different inmates whose only commonality is an alleged isolation. The myriad other claims raised by them consist of individual, personalized, and distinct claims that have no commonality and do not belong in the same lawsuit.

B.     **Plaintiff Douglas Coleman.**

Mr. Coleman, an inmate at Stateville Correctional Center ("Stateville") alleges that he served eight months in segregation because alcohol was found in his cell, and for two other disciplinary tickets. Compl. at ¶¶ 9, 51, 52. Mr. Coleman refers to his punishment as "segregation," instead of "extreme isolation." Compl. at ¶51-71. Mr. Coleman was not held in isolation. First and foremost, Mr. Coleman admits that he had a cellmate while in segregation. Compl. at ¶ 54. In fact, Mr. Coleman requested to be placed in a cell by himself, and this request was denied. Compl. at ¶¶ 57-58. Mr. Coleman interacted with correctional officers and was allowed to shower while he was in segregation. Compl. at ¶ 55. Mr. Coleman was given access to medical staff and taken to the Health Care Unit while he was in segregation. Compl. at ¶59.

---

[1] Though it is not explicitly clear form the Complaint, it appears that this is one of the bases from Plaintiffs' due process claims.

Further, Mr. Coleman raises the following issues as grounds for his claims: (1) There were insects, birds, and rodents in his cell house; (2) he had a mentally disturbed cellmate; (3) due to his colostomy bag, Mr. Coleman was forced to clean the showers before and after use; (4) failure to provide proper medical care, including use of a wheelchair and cane. Compl. at ¶¶ 51-71. There are no allegations in the Complaint that Mr. Coleman was ever placed in isolation of any kind, or even placed in a cell by himself.

### C. Plaintiff Aaron Fillmore.

Mr. Fillmore, currently an inmate at Lawrence Correctional Center ("Lawrence") alleges that he has been held in "extreme isolation" for the past 15 years. Compl. at ¶ 10. Specifically, "extreme isolation" is used, as it pertains to Mr. Fillmore, as a catch-all term which encompasses "segregation, Administrative Detention, or Investigative Status." Compl. at ¶10. Mr. Fillmore alleges that he has had little to no physical contact with other people in 15 years. Compl. at ¶ 72. Mr. Fillmore was initially placed in disciplinary segregation 15 years ago, when he pled guilty to injuring a correctional officer while he was incarcerated at Stateville. Compl. at ¶73. For this crime, Mr. Fillmore was given an additional sentence. Compl. at ¶73.

Like Mr. Coleman, Mr. Fillmore directly contradicts his claim that he has been kept in "extreme isolation" and has not had contact with other people. Mr. Fillmore alleges that at Lawrence, inmates in Administrative Detention are double-celled. Compl. at ¶ 75. Mr. Fillmore is unhappy being celled with inmates he describes as "mentally ill" because they "make noise 24 hours a day, 7 days a week." Compl. at ¶75. Instead of complaining about being isolated from others, Mr. Fillmore complains that the inmates with which he is incarcerated are causing too much stimulus. Compl. at ¶75.

Mr. Fillmore raises the following issues as grounds for his Complaint: (1) he is not provided with religious programs while in "extreme isolation"; (2) he has been denied reading material; (3) he has been denied his own property, including legal material; (4) he is not given enough exercise or "yard" time; (5) he is not given gloves in the winter; (6) he is only allowed one shower per week; (7) h is blankets are only washed once every three months. Compl. at ¶¶ 75-76. Once again, there are no allegations in the Complaint that Mr. Fillmore was ever placed in isolation of any kind, or even placed in a cell by himself.

**D. Plaintiff Jerome Jones.**

Plaintiffs alleged that Mr. Jones is in administrative detention segregation at Lawrence Correctional Center ("Lawrence"). Compl. at ¶ 84. Mr. Jones claims that he had been told that he had been placed in administrative segregation due to his involvement in a gang. Compl. at ¶86. Mr. Jones denies that he was associated with gangs while at either Stateville or Lawrence. Compl. at ¶86.

Mr. Jones alleges that in segregation, he had the following privileges revoked or reduced: (1) he lost audio-visual privileges; (2) he experienced "decreased access to property, phones, recreation time, showers, and the law library"; (3) he was only permitted showers twice a week; (4) he was only provided with six hours of recreation time per week; (5) he was only permitted four no-contact, pre-approved two-hour visits per month, subject to security measures. Compl. at ¶¶ 87, 89. Mr. Jones does not allege that he did not have a cell-mate, or that he was placed isolated from other inmates/officers.

**STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly

5

stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a plaintiff's complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

A plaintiff's complaint must contain allegations that "state a claim to relief that is plausible on its face." *Iqbal,* at 663, citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* at 663. In reviewing the sufficiency of a complaint under this standard, the court must accept as true all well-pleaded factual allegations. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). However, legal conclusions and "conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

## ARGUMENT

### I. <u>Plaintiffs Have No Liberty Interest In Avoiding Assignment to Segregation.</u>

Plaintiffs' challenge to being placed in segregation, Plaintiffs fail to state a claim. Count I of Plaintiff's Complaint seeks injunctive relief for alleged violations of the Plaintiffs' Eighth and Fourteenth Amendment rights. Compl. at p. 35. Specifically, Plaintiffs allege that the conditions in segregation constitute cruel and unusual punishment, that Defendant has been deliberately indifferent to the extent that Plaintiffs are deprived of basic human needs in "extreme isolation." Count II seeks injunctive relief pursuant to the Due Process Clause of the Fourteenth Amendment. Compl., p. 36.

To state a due process claim under §1983, a plaintiff must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Lekas v. Briley,* 405 F.3d 602, 607 (7th Cir. 2005). Due process is a two-part analysis and Plaintiffs cannot complain that they did not receive procedural due process unless they have first established that they were deprived of a constitutionally protected interest. *Id.* "An inmate has a due process liberty interest only if the conditions of his or her confinement impose 'atypical and significant hardship…in relation to the ordinary incidents of prison life." *Id.*

First and foremost, "[a] prisoner has no liberty interest in remaining in the general prison population." *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir. 1995). The Constitution does not give rise to a liberty interest in avoiding a transfer to a more adverse or restrictive confinement. *Wilkinson v Austin,* 545 U.S. 209, 221 (2005) *citing Meachum v. Fano,* 427 U.S. 215, 225 (1976) ("confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Inmates may be transferred for any reason or for no reason at all. *Williams,* 71 F.3d at 1248. In *Williams,* the plaintiff complained that he was locked in a closed-front cell twenty-four hours each day, was not permitted to participate in activities available to general population, was handcuffed whenever he left his cell and had very little contact with inmates or staff. *Williams,* 71 F.3d at 1249. The Seventh Circuit found that these conditions did not "greatly exceed[] what one could expect from prison life generally…" and accordingly, did not give rise to a liberty interest. *Id.* "Where there is no liberty interest, there can be no due process violation." *Id.* at 1250.

Further, "[t]he due process clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin v. Conner,* 515 U.S. 472, 480 (1995)(citations omitted). The Supreme Court found in *Sandin* that a prisoner did not have a

protected liberty interest in remaining free from punitive segregation because this type of confinement did not "present a dramatic departure from the basic conditions of [plaintiff]'s indeterminate sentence." *Sandin,* 515 U.S. at 485. "Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. [Citations omitted.] In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).

As such, the Complaint does not allege the deprivation of a liberty interest. Plaintiffs Coleman and Fillmore claim that were/are held in disciplinary segregation. Compl. at ¶¶ 9, 10, 51, 52, 73. They have not alleged any facts (or even conclusions) that their time in disciplinary segregation presented "a dramatic departure from the basic conditions" of their time in the general population. Plaintiff Jones alleges that he was housed in administrative detention. ¶ 84. Courts have repeatedly found that "administrative segregation is the sort of confinement that inmates should reasonably anticipate." *Lekas,* 405 F.3d at 609, *quoting Meriwether v. Faulkner,* 821 F.2d 480, 414 (7th Cir. 1987). Even indefinite placement in administrative segregation does not amount to cruel and unusual punishment. *Bono v. Saxbe,* 620 F.2d 609, 614 (7th Cir. 1980). Placement in segregation or administrative detention does not give rise to a liberty interest and this Court need not consider the procedural due process afforded to Plaintiffs in that regard. Accordingly, Plaintiffs' Complaint should be dismissed for failure to state a claim.

## II.   In the Alternative, Plaintiffs' Complaint Should Be Severed Pursuant to *George v. Smith*.

Even if this Court finds that one or more of the Plaintiffs have stated a claim or claims upon which relief may be granted, these are at best individual claims and should be treated as such. Mr. Coleman complains about the conditions of his confinement in F house at Stateville,

as well as medical care that he believes is inadequate. Compl. at ¶¶ 51-71. Mr. Fillmore complains about being housed with cellmates who are mentally ill, and the lack of privileges he is afforded in segregation at Lawrence. Compl. at ¶¶ 75-76. Finally, Mr. Jones complains about being held in administrative detention due to gang involvement, though he apparently disagrees that he has ever been part of a gang. Compl. at ¶¶ 87, 89. The three Plaintiffs' allegations are wholly unrelated.

Rule 21 provides in pertinent part that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. As the Seventh Circuit made clear in *George v. Smith*, "[u]nrelated claims against different defendants belong in different suits," 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit held that a prisoner's multi-claim, multi-defendant single suit should instead be brought in separate actions. *Id.*; *see also Harris v. Dart*, No. 10 C 6666, 2010 WL 5158134, *2 (N.D. Ill. Dec. 14, 2010) ("The plaintiff must choose a single, core claim to pursue under this case number.").

The allegations set forth in the Complaint encompass myriad issues, thousands of inmates, and all 44 correctional facilities in Illinois. To the extent each of the putative class members are complaining about their respective medical care, conditions of confinement, and specific claims regarding due process of their disciplinary or administrative segregation, this case would encompass tens of thousands of individual claims. The Northern District would be an improper venue for the majority of said claims. As such, to the extent this Court finds that Plaintiffs have stated claims, these collective claims should be severed into individual claims pursuant to *George*.

WHEREFORE, based on the foregoing, Defendant GLADYSE TAYLOR requests that this Court grant her Motion to Dismiss Plaintiffs' Complaint and for such other relief as the Court deems just and reasonable.

Respectfully Submitted,

LISA MADIGAN
Attorney General of Illinois

By:   /s/ Lyle K. Henretty
LYLE K. HENRETTY
ERIN R. GARD
Assistant Attorneys General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 814-3327/5163