UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DOUGLAS COLEMAN, AARON FILLMORE, and JEROME JONES, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>JOHN BALDWIN, Acting Director of the Illinois Department of Corrections,[1]<br><br>      Defendant. | Case No. 15-cv-5596<br><br>Hon. James B. Zagel |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The use of extreme isolation by prison systems nationwide is an inhumane practice that more often than not serves little to no penological purpose. *Davis v. Ayala*, 135 S. Ct. 2187, 2210, (2015) (Kennedy, J., concurring). As stated by Justice Kennedy, "consideration of [solitary confinement] issues" and "workable alternative systems" are desperately needed. *Id.* An "estimated … 25,000 inmates in the United States are currently serving their sentence in whole or substantial part in solitary confinement, many regardless of their conduct in prison." *Id.* at 2208-09. "[This] solitary confinement regime … will bring you to the *edge of madness, perhaps to madness itself.*" *Id.* (emphasis added). Indeed, "[y]ears on end of near-total isolation exact a terrible price." *Id.* at 2210. "[S]o stark an outcome ought not to be the result of society's simple unawareness or indifference." *Id.*

The Illinois Department of Corrections' ("IDOC") extreme isolation policies and practices are at least as bad as those described by Justice Kennedy in *Davis v. Ayala*. These

---

[1] Plaintiffs initially named Gladys Taylor, Acting Director, as the defendant in her official capacity. The new Acting Director of the Illinois Department of Corrections is John Baldwin. Per Rule 25(d), Federal Rules of Civil Procedure, an officer's successor sued in his official capacity is automatically substituted as a party.

policies and practices, detailed in Plaintiffs' Complaint, compel "both prison officials and judges to be alert for the potentially serious adverse consequences of protracted segregation as punishment for misbehavior in prison, especially the kind of nonviolent misbehavior involved in the present case." *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015). Here, Plaintiff's Complaint seeks injunctive relief on behalf of a class of similarly situated persons from the IDOC's violations of the Fourteenth Amendment's due process clause and the Eighth Amendment's protection against cruel and unusual punishment. (Compl. ¶¶ 100-104.)

In response, Defendant attempts to sweep these constitutional violations under the rug by misstating the applicable law, failing to assume the truth of well-pleaded facts, seeking unjustified factual inferences in Defendant's favor, ignoring Plaintiffs' Eighth Amendment claims, ignoring the seminal Seventh Circuit segregation due process decision, *Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005), and barely paying lip service to controlling Supreme Court decisions such as *Wilkinson v. Austin*, 45 U.S. 209, 224 (2005). (*See* D.I. 14-16.) Untethered by the applicable standard for motion practice under Rule 12(b)(6) and undeterred by unfavorable precedent, Defendant seeks dismissal with prejudice. (*See* D.I. 15, hereinafter "Mot.") Defendant's motion should be denied.[2]

## I.    FACTS

Illinois inmates in extreme isolation are confined to "tiny, filthy, cold and barren cages" for "23 hours or more a day" for weeks, months, if not years on end. (Compl. ¶¶ 3, 20.) As of June 30, 2013, "680 individuals were serving segregation sentences of *more than one year* and 218 individuals were serving segregation sentences of *more than ten years*." (Compl. ¶ 20.) Named plaintiffs are representative of the hundreds of inmates subjected to extreme and

---

[2] Per this Court's order on August 26, 2015 (D.I. 17), Plaintiffs' depositions have since been taken and have revealed additional factual support for Plaintiffs' claims. Therefore, in the event of dismissal, Plaintiffs respectfully request leave to amend their Class Action Complaint.

indefinite isolation, often for minor infractions that have never been substantiated by IDOC. (Compl. ¶¶ 51-52, 72, 79, 83-86.) While in isolation, Plaintiffs are stripped of their normal privileges, including access to valuable educational and physical activities, deprived of meaningful social interaction, and held in cramped cages. (Compl. ¶ 3.) Plaintiffs' unwarranted time and suffering in extreme isolation are a direct result of IDOC's inadequate policies and customs. (Compl. ¶¶ 21-40.) Indeed, IDOC regulations permit extreme isolation without notice or a hearing as a form of "nondisciplinary status of confinement." *See, e.g.*, 20 Ill. Adm. Code § 504.660 (2015).

**Plaintiff Aaron Fillmore.** Fillmore has continuously been held in isolation for approximately 15 years despite the absence of the commission of any violent or threatening act for several years. (Compl. ¶ 74.) Fillmore has repeatedly filed grievances challenging his seemingly endless placement in extreme isolation. (Compl. ¶¶ 72-82.) These grievances, however, have been met with indifference by IDOC. *Id.* Most recently, IDOC sentenced Fillmore to one year in extreme isolation because of alleged gang affiliation. (Compl. ¶ 83.) In support of this allegation IDOC claimed that "a series of telephone calls [Fillmore] allegedly made and … letters [Fillmore] allegedly wrote … contained coded gang instructions." *Id.* Fillmore's requests for the production and/or review of those alleged letters and phone records, however, were arbitrarily denied. *Id.* He had no meaningful opportunity to be heard or to defend himself against IDOC's accusations. In extreme isolation Fillmore is "only allowed one brief shower each week" and has been denied gloves during the winter. (Compl. ¶ 76.) His yard time has been sharply curtailed and takes place in a "single-person cage." (Compl. ¶ 77.) He has also been "denied books, catalogs, newspapers, and other materials from the library in addition to other personal property." (Compl. ¶ 76.) His access to religious programs has been denied

entirely and requested visits from the chaplain go unanswered. *Id.* Despite suffering from mental health issues, Fillmore at times has been double-celled in cells that are two small for one person, let alone more than one. (Compl. ¶ 77.)

**Plaintiff Jerome Jones.** Jones likewise has been placed in extreme isolation for unsubstantiated gang involvement. (Compl. ¶¶ 84-86.) Although Jones was removed from general population in July 2013, IDOC did not notify him of the reasons for his removal until seven to eight months later. *Id.* At that time, Jones was denied "a meaningful opportunity to review the evidence against him" and the ability to "present any evidence in his defense." (Compl. ¶ 86.) Jones' grievance concerning IDOC's lack of notification was similarly disregarded. (Compl. ¶ 87.) Jones also has experienced the harsh conditions of extreme isolation. Jones' privileges have been drastically decreased and he has "experienced decreased access to property, phones, recreation time, showers and law library time." (Compl. ¶ 87.) Moreover, Jones is only permitted four no-contact, pre-approved two-hour visits per month "as security measures allow." (Compl. ¶ 89.)

**Plaintiff Douglas Coleman.** Coleman's most recent extreme isolation sentence occurred after alcohol was found in his cell. (*See* Compl. ¶¶ 51-52.) Despite Coleman's limited mobility (he is confined to a wheelchair), he was sentenced to six months in extreme isolation. *Id.* That sentence was extended to *eight months* after receiving two additional disciplinary tickets while in extreme isolation. *Id.* Coleman's segregation conditions included roaches, mice, and birds flying inside the unit. (Compl. ¶ 53.) During winter, "broken windows and missing window panes made [his] cell unbearably cold." (*Id.*; *see also* Compl. ¶ 68.) Coleman has been denied showers while in extreme isolation. (Compl. ¶¶ 57, 59, 66, and 67.) IDOC also repeatedly deprived Coleman access to his wheelchair and walking cane. (Compl. ¶¶ 57, 60, 62, and 64-

65.)

## II. LEGAL STANDARD UNDER FED. R. CIV. P. 8 AND 12(b)(6)

Rule 8, Federal Rules of Civil Procedure, requires only that a complaint contain allegations "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of the plaintiff's claims." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). A complaint is sufficient if it "put[s] Defendants on notice of the nature of Plaintiff's claims." *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 993 (N.D. Ill. 2009); *see also De David v. Alaron Trading Corp.*, 814 F. Supp. 2d 822, 831 (N.D. Ill. 2011) (complaint "certainly suffices to put the parties on notice of the claims against them").

A Rule 12(b)(6) motion "does not test the merits of a claim, but rather the sufficiency of the complaint." *JP Morgan Chase Bank, N.A. v. McDonald*, No. 11-6902, 2015 WL 6784238, at *1 (N.D. Ill. Nov. 6, 2015) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations need only be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). These facts need only state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When ruling on a motion to dismiss, "the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff." *JP Morgan*, 2015 WL 6784238, at *1.

## III. ARGUMENT

### A. Plaintiffs Have Stated a Claim for Violations of the Fourteenth Amendment's Due Process Clause.

Defendant's "[f]irst and foremost" argument is that "a prisoner has no liberty interest in remaining in the general prison population." (Mot. at 7.) That may be generally true, but the point is irrelevant here because Plaintiffs are not asserting a right to remain in the general prison

population. Instead, they are asserting a well-established protected liberty interest in avoiding extreme isolation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This protected liberty interest includes the right to avoid being held in isolation for 23 hours a day in cells that measure 7 by 14 feet, where visitation opportunities are sharply curtailed, and where inmates are deprived of various forms of environmental and sensory stimuli, including human contact. *Wilkinson*, 545 U.S. at 223-24. In *Wilkinson*, inmates were placed in segregation for indefinite duration and, while in segregation, were ineligible for parole consideration. *Id.* "While any of these conditions standing alone might not be sufficient to create a liberty interest, *taken together* they impose an atypical and significant hardship within the correctional context." *Id.* (emphasis added).

"[T]he presence of a cognizable liberty interest" is determined "by analyzing the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009); *see also Toston v. Thurmer*, 689 F.3d 828, 832 (7th Cir. 2012) (vacating the dismissal of an inmate's due process claims and recognizing that transfer from general prison population to segregated confinement may be "deemed a deprivation of liberty … [where] the period of segregated confinement is protracted … or the conditions in segregation [are] unusually harsh"); *Kervin*, 787 F.3d at 836 (7th Cir. 2015) (district court erred by "failing to assess the aggregate punishments inflicted" and by suggesting "that a prisoner must spend at least six months in segregation before he can complain about having been deprived of liberty without due process of law").

The Seventh Circuit in *Marion* did not limit this analysis to cases involving only

disciplinary segregation. Instead, it recognized that "a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh" regardless of whether segregation is "imposed for administrative, protective, or investigative purposes." 559 F.3d at 697-98. Moreover, the Court refused to read *Wilkinson*'s holding as limited to its specific facts—as requiring indefinite confinement and parole disqualification to trigger due process protections. *Id.* 697; *see also Westefer*, 422 F.3d at 590 (any reading of *Wilkinson* that turns exclusively on the disqualification from parole consideration is "far too crabbed").

Here, Plaintiffs have alleged a protectable liberty interest in avoiding extreme isolation. Inmates held in extreme isolation are confined to "tiny, filthy, cold and barren cages" for "23 hours or more a day" for weeks, months, if not years on end. (Compl. ¶¶ 3, 20 (as of June 30, 2013, "680 individuals were serving segregation sentences of *more than one year* and 218 individuals were serving segregation sentences of *more than ten years*") (emphasis added); 51-53 (Coleman spent eight months in disciplinary segregation during which time "insects and mice [were found] in the food" and "broken windows … made the cell unbearably cold"); 72 (asserting the Fillmore has continuously been held in extreme isolation for approximately 15 years); 84 (asserting that Jones has been held in administrative detention for approximately 2 years).) They are denied access to almost all of IDOC's internal programming, including educational programs and religious services. (*Id.*; *see also* Compl. ¶¶ 75-76, 87-89.) Showers and access to medical care in extreme isolation, including mental health services, are often refused and/or denied outright. (Compl. ¶¶ 55-71, 75-77, 89.) Quarantined from the general population, inmates held in extreme isolation are deprived of almost all meaningful social interactions. (*Id.*) The amount and quality of their yard time is also significantly diminished.

(Compl. ¶¶ 3, 75.)  The Complaint describes both the severe physical and psychological harms inflicted by extreme isolation.  (Compl. ¶¶ 13-15.)  Double-celling in these unbearable conditions only amplifies the impact on the inmates.  (Compl. ¶¶ 54, 57, 77.)  Taken together, these conditions impose an "atypical and significant hardship … in relation to the ordinary incidents of prison life."  *See Westefer v. Snyder*, 725 F. Supp. 2d 735, 769 (S.D. Ill. 2010), *vacated and remanded on other grounds by Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012).[3]

Once a protectable liberty interest has been established, federal courts examine whether the inmates were afforded process sufficient to satisfy the Fourteenth Amendment.  Three factors are balanced when making this determination: (1) the private interests at stake; (2) the risk of erroneous deprivation under the procedures in place, and the probable value, if any of additional or alternative procedures; and (3) the State's interest (including fiscal and administrative burdens that additional or substitute procedural safeguards would entail).  *Wilkinson*, 545 U.S. at 224-25.

The "requirements of due process are flexible and call for such procedural protections as the particular situation demands."  *Id.* at 224.  In *Westefer v. Neal*, the Seventh Circuit explained that due process requires, at a minimum, "some notice" of the charges against him, an "opportunity to present his views," enough time to "prepare adequately" for the administrative review, and periodic review after the initial placement review.  682 F.3d at 684-86; *see also Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) ("[D]ue process requires that [an inmate] receive advance written notice of the charges, the chance to present testimony and

---

[3] Defendant's rejoinder to these detailed factual allegations is that "[Plaintiffs] have not alleged any facts (or even conclusions) that their time in disciplinary segregation presented 'a dramatic departure from the basic conditions' of their time in the general population." (Mot. at 8).  Defendant apparently is suggesting that conditions are really, really bad in the general population – so bad that no qualitative difference exists between the general population and segregation.  The degree of the difference is a fact question left for trial.  For now, suffice it to say that Plaintiffs have alleged a qualitative difference.  *See, e.g.*, Compl. ¶¶ 57, 60, 62, 64-65 (Coleman denied access to his wheelchair and walking cane while in segregation). Moreover, the inference Defendant seeks (conditions are just as bad in the general population) is not an inference to which Defendant is entitled on a Rule 12(b) motion to dismiss.  *Iqbal*, 556 U.S. at 678.

documentary evidence to an impartial decision-maker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken."); *Meskauskas v. Buskohl*, No. 15-CV-00431-MJR, 2015 WL 2407577, at *7 (S.D. Ill. May 19, 2015) ("An inmate facing disciplinary charges is entitled to: (1) receive advance written notice of the charges against him; (2) appear in person before an impartial hearing body to contest the charges; (3) call witnesses and present documentary evidence in his defense (subject to the discretion of correctional officials); and (4) receive a written statement of the reasons for the disciplinary action taken.").

Here, Plaintiffs have alleged many reasons why IDOC's policies and procedures, both on their face and as applied, inadequately safeguard their liberty interests. First, IDOC frequently, and pursuant to its written procedures, places inmates in extreme isolation without notice and without any type of hearing or opportunity to defend against the charges. (Compl. ¶¶ 29-30, 82, 84-86 (Jones was not informed as to why he was removed from general population until seven to eight months after his removal and transfer to another facility).) Second, even when a "hearing" is afforded, it does not provide the inmate with a meaningful opportunity to contest IDOC's charges. (Compl. ¶¶ 28, 79-83 (IDOC repeatedly denied Fillmore's requests to review exonerating evidence and to call witnesses).) The IDOC also routinely imposes extreme isolation sentences "without taking into account factors that might make such extreme isolation particularly disproportionate, painful, and harmful" and "without any subsequent individualized reviews to determine whether it is still necessary to keep that individual in segregation." (Compl. ¶¶ 34-37, 51-71 (Coleman spent eight months in segregation despite his disability confining him to a wheelchair and use of a colostomy bag).) These procedural deficiencies "result in unjustified, inconsistent, and harmful segregation sentences" and fail to adequately safeguard Plaintiffs' liberty interests. (Compl. ¶ 40.)

**B. Plaintiffs Have Stated a Claim Under the Eighth and Fourteenth Amendments' Prohibition Against Cruel and Unusual Punishment.**

Defendant's Motion to Dismiss (D.I. 15) did not challenge Plaintiffs' claim for injunctive relief for violations of the Eighth Amendment. Therefore, no basis exists to dismiss Plaintiffs' First Cause of Action. (Compl. ¶¶ 100-101.) We nevertheless establish below that Plaintiffs have stated a claim for relief under the Eighth Amendment.

**1. Conditions of Confinement Are Subject to Eighth Amendment Scrutiny.**

To be sure, "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but it does impose a duty on prison officials to provide inmates with "humane conditions of confinement," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment violation, inmates must show (1) that the alleged deprivation of humane conditions of confinement is "objectively, sufficiently serious," and (2) that the officials acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

Examples of confinement conditions that merit Eighth Amendment scrutiny include extreme isolation. *Hutto v. Finney*, 437 U.S. 678, 685 (1978) ("Confinement … in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards."). Other examples include confinement situations where the state "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotes omitted). The Seventh Circuit has found violations of the Eighth Amendment where inmates were double-celled "up to 20 to 23 hours per day" in "dirty and odorous" cells with poor air circulation and lighting and where "[t]he kitchen, commissary and food storage areas were unsanitary and infested with mice and roaches." *French v. Owens*, 777 F.2d 1250, 1251-55 (7th Cir. 1985); *see also Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) ("[T]he minimal standards required by

the Eighth Amendment include the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort.") (internal quotes omitted); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) ("Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being.").

Similarly, district courts have held that conditions comparable to those alleged by Plaintiffs here merit scrutiny under the Eighth Amendment. *See, e.g.*, *Ashker v. Brown*, No. 09-5796, 2013 WL 1435148, at *5 (N.D. Cal. Apr. 9, 2013) (plaintiff's claims of prolonged social isolation and lack of environmental stimuli for at least 11 years stated a deprivation sufficiently serious to satisfy the objective prong of their Eighth Amendment claim at the motion to dismiss stage); *Ruiz v. Johnson*, 37 F. Supp. 2d 885, 915 (S.D. Tex. 1999) ("[A] systemic pattern of extreme social isolation and reduced environmental stimulation … are the cause of cruel and unusual pain and suffering by inmates in administrative segregation."), *reversed and remanded on other grounds by Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001); *Wilkerson v. Stadler*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (failing to identify social interaction and environmental stimulation as basic human needs would be "inconsistent with jurisprudence recognizing mental health as worthy of Eighth Amendment protection, and the requirement that Eighth Amendment protections change to reflect evolving standards of decency that mark the progress of a maturing society") (internal quotes omitted); *Shoatz v. Wetzel*, No. 2:13-cv-0657, 2014 WL 294988 (W.D. Penn. Jan. 27, 2014) (human interaction and environmental stimulation as basic human needs, and holding that plaintiff's 22-year solitary confinement sentence, which caused him to suffer mental anguish, increased stress, anxiety, and depression sufficient to state an objectively serious deprivation at motion to dismiss stage).

Here, consistent with the authorities cited above, Plaintiffs have alleged conditions of extreme isolation at IDOC that are "objectively, sufficiently serious" to warrant Eighth Amendment scrutiny. Plaintiffs allege that extreme isolation causes them to be confined to their cells for "23 hours or more a day." (Compl. ¶ 3.) While in extreme isolation, Plaintiffs are entirely deprived of access to IDOC's educational programs, religious services, and libraries. (Compl. ¶¶ 76, 87.) Little to no physical contact is afforded to inmates in extreme isolation. (Compl. ¶ 89 (Jones "is only permitted four no-contact, pre-approved two-hour visits 'as security measures allow'"). Fillmore, for instance, "has had little to no physical contact with other people [for approximately 15 years] and has suffered mentally as a result." (Compl. ¶ 72.) The cells in extreme isolation are "tiny, filthy, cold and barren" and often infested with insects and rodents. (Compl. ¶¶ 3, 53 and 68.) Yard or recreation time is strictly limited, frequently denied, and occurs in "a single-person cage." (Compl. ¶¶ 75, 87, and 89.) In essence, inmates in extreme isolation are "rendered lifeless for months and years on end" and forced to endure deplorable conditions. (Compl. ¶ 3).

Once a sufficiently serious deprivation is established, an inmate must then demonstrate that the defendant acted with deliberate indifference to that condition. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). To have acted with "deliberate indifference," the defendant must have had subjective knowledge of the risk that the condition posed to an inmate's health and disregarded that risk. *Thomas v. Cook Cty. Sheriff's Dep't*, 588 F.3d 445, 452 (7th Cir. 2009). Importantly, deliberate indifference may be inferred when the circumstances suggest that the defendant was exposed to information about the risk or from the very fact that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Here, the severe risk of harm caused by the imposition of extreme isolation is not only

obvious but has been reported repeatedly to Defendant. Plaintiffs have submitted countless grievances relating to the inhumane conditions of extreme isolation. (Compl. ¶¶ 56-70, 78-82, 87.) In addition, the nationally respected Vera Institute of Justice informed IDOC that "[t]he conditions of confinement in [Disciplinary Segregation] are *not acceptable*." (Comp. ¶¶ 44-45 (emphasis added).) Despite this knowledge, Defendant has refused to revamp IDOC's policies pertaining to extreme isolation and, therefore, acted with deliberate indifference in violation of the Eighth Amendment. (Compl. ¶¶ 41-50); *see also Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (letters of complaint and internal prison grievances about deprivation of food and medicine put defendants on notice of seriously harmful deprivations); *Vasquez v. Braerner*, No. 11-cv-806, 2013 WL 4084284, at *18 (W.D. Wis. Aug. 13, 2013) (deliberate indifference where "defendants have received information on this issue in other lawsuits involving the affects of segregation on mentally ill prisoners").

### 2. Disproportionate Punishment Is Subject to Eighth Amendment Scrutiny.

The Eighth Amendment's proscription of cruel and unusual punishment also applies when prison officials mete out seriously disproportionate punishments for violations of prison rules. *Adams v. Carlson*, 488 F.2d 619, 635-36 (7th Cir. 1973) ("[P]unishment which is disproportionate to the offense committed constitutes cruel and unusual punishment, whether imposed without or within prison walls"). To determine whether prison disciplinary measures are disproportionate to the infraction, courts consider "the circumstances surrounding the segregation decision, including, first, the circumstances surrounding the offense, second, the prisoner's disciplinary record, and, third, the offense for which [the inmate] originally was incarcerated." *Maydun v. Franzen*, 704 F.2d 954, 961 (7th Cir. 1983) (internal quotes omitted).

Here, Plaintiffs have all alleged extreme isolations that are grossly disproportionate to the underlying violation. (Compl. ¶¶ 51-52 (Coleman sentenced to six months in extreme isolation

after alcohol was found in his cell); ¶ 74 (Fillmore remained in extreme isolation despite having "an almost spotless disciplinary record" for the past 15 years); ¶¶ 84-89 (Jones has remained in extreme isolation for over a year even though he has not been issued a disciplinary ticket since 2001).) The Complaint, therefore, sufficiently states a claim of disproportionate punishment. *See Chapman v. Pickett*, 586 F.2d 22, 28 (7th Cir. 1978) (a period of nearly seven months confinement in segregation was manifestly disproportionate to the inmate's offense of failing to perform work as instructed); *Black v. Brown*, 524 F. Supp. 856, 858 (N.D. Ill. 1981) (eighteen months of combined isolation and segregation for running in the prison yard constituted grossly disproportionate punishment in violation of the Eighth Amendment).

### C. Defendant's Request for Severance Should Be Denied.

Defendant argues that severance is appropriate because Plaintiffs' claims are supposedly unrelated. (Mot. at 8-9.) This argument is not well-founded either factually or legally. Defendant ignores that Plaintiffs are not three unrelated individuals seeking to join their damages claims in a single action. This action involves three *related* plaintiffs who bring a Rule 23 class-action complaint as representatives of persons adversely affected by the IDOC's unconstitutional segregation policies and procedures. This fact alone makes Defendant's cases wholly inapposite.[4]

As stated in *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 744 (N.D. Ill. 2007), when denying a motion to sever in a class action case:

> [Defendant's] argument [in favor of severance], however, is really an argument about the appropriateness of class certification, which is not the issue before me.

---

[4] In *George v. Smith*, a single plaintiff filed a "sprawling" "buckshot" 50-claim complaint against 24 persons who had a role in his confinement. 507 F.3d 605, 606 (7th Cir. 2007). *See also Harris v. Dart*, No 10 C 666, 2010 WL 5158134, at *2 (N.D. Ill. Dec. 14, 2010) (dismissing without prejudice a complaint – not a class action – involving a single plaintiff alleging various claims against various correctional officers and staff for such injuries as rash, destruction of personal property, and failure to staff the jail).

> The standard for permissive joinder under Rule 20 is liberal; it requires only that [Plaintiffs] have (a) a right to relief arising from a single occurrence or series of occurrences and (2) a single common question of law or fact. (internal citations omitted).

Here, even in the absence of class action claims, the joinder of claims by Coleman, Fillmore, and Jones would be proper because they have a common claim: injunctive relief from IDOC's segregation policies and procedures. (Compl. ¶¶ 8-12; 51, 70-72; 83-84, 89, 90-96.) Plaintiffs' claims arise from (1) the same Department policies and customs on segregation, and (2) relate to the same questions of law and fact under the Eighth and Fourteenth Amendments.

"Federal policy favors joinder, as the purpose of Rule 20 is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Smith v. Ne. Ill. Univ.*, No. 98-3555, 2002 WL 377725, at *1-3 (N.D. Ill. Feb. 28, 2002) (internal citations omitted) (plaintiffs' dissimilar allegations of a hostile work environment were "tantamount to allegations that there was a widely held policy of discrimination … constitut[ing] a single transaction"); *see also Dean v. City of Chicago*, No. 09-1190, 2009 WL 2848865, at *1, 3 (N.D. Ill. Aug. 31, 2009) (finding joinder proper where plaintiffs alleged the City had "maintained a common set of policies that caused their false arrests," constituting "a series of occurrences or transactions").

To the extent that different sets of policies govern different correctional facilities (as Defendant suggests without any factual basis), then this Court at the appropriate time may consider whether the class should be divided into subclasses pursuant to Rule 23(c)(5). *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 368-69 (7th Cir. 2012) (noting that "the fact that a class is overbroad and should be divided into subclasses is not in itself a reason for refusing to certify the case as a class action") (internal citations omitted).

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiffs Douglas Coleman, Aaron Fillmore, and Jerome Jones respectfully request that this Court deny Defendant's Motion to Dismiss.

December 29, 2015

By: /s/Kimball R. Anderson
One of Plaintiffs' Attorneys

Kimball R. Anderson
Alyssa Ramirez
Joanna F. Cornwell
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
312-558-5858 (tel)
312-558-5700 (fax)
aramirez@winston.com
kanderson@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan Road
Chicago, IL 60640
773-769-1411 (tel)
773-769-2224 (fax)
alan@uplcchicago.org

## **CERTIFICATE OF SERVICE**

The undersigned counsel for Plaintiffs hereby certifies that on this 29th day of December, 2015, she caused a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS to be served via CM/ECF to all parties and counsel of record.

/s/ Alyssa E. Ramirez