# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOUGLAS COLEMAN, AARON FILLMORE, JEROME JONES, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>John Baldwin, Acting Director of the Illinois Department of Corrections,<br><br>Defendant. | No. 15 C 5596<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's Motion to Dismiss is granted.

### BACKGROUND

Plaintiffs Douglas Coleman ("Coleman"), Aaron Fillmore ("Fillmore"), and Jerome Jones ("Jones") are inmates who have been or are currently housed in segregation at various Illinois Department of Corrections ("IDOC") correctional centers. Plaintiffs, who seek to represent a class of similarly situated inmates placed in IDOC's segregation housing, bring this suit against Defendant John Baldwin, Acting Director of the IDOC.[1] Plaintiffs allege that Defendant has violated their right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments (claim I), and their constitutional due process rights under the

---

[1] After Plaintiffs' Complaint was filed, John Baldwin became Acting Director of the Illinois Department of Corrections, thereby replacing previous Acting Director Gladyse C. Taylor as the Defendant in this matter.

Fourteenth Amendment (claim II). Plaintiffs seek declarative and injunctive relief against Defendant. Because the particulars of their claims differ, I will summarize them separately here.

Douglas Coleman alleges that he served eight months in segregation after receiving multiple disciplinary tickets. He describes segregation conditions that include roaches, mice, and birds inside his cell, as well as unbearably cold temperatures during the winter months. In addition to harsh cell conditions, Coleman alleges that he was forced to share a cell with a mentally ill inmate for at least part of his segregation sentence and that he has been denied showers multiple times. Furthermore, he alleges that, in spite of his limited mobility due to a stroke, IDOC has repeatedly deprived him of a wheelchair and walking cane.

Jerome Jones alleges that IDOC placed him in segregation due to unsubstantiated claims regarding Jones' gang involvement. Jones asserts he was not notified of the reason for his removal from general population until seven to eight months after transfer to segregation, thereby denying him the opportunity to review evidence against him and present any evidence in his defense. While in segregation, Jones describes experiencing dramatic decreases in his access to his personal property, phones, recreation time, showers, and law library time. Likewise, Jones' visiting privileges were decreased to four no-contact, pre-approved two-hour visits per month, as compared to the six monthly visits permitted to inmates in general population.

Finally, Aaron Fillmore alleges that he has been continuously held in segregation for approximately 15 years. He has filed multiple grievances challenging his placement in segregation, including his most recent one-year stint in segregation as a result of his alleged gang affiliation. Fillmore alleges that his requests for production and/or review of the letters and phone records on which IDOC relied to support its allegations were arbitrarily denied. He also says he is allowed only one brief shower a week and that his yard time has been drastically

curtailed and takes place in a "single-person cage." Fillmore further complains of being denied access to materials from the library, personal property, religious programs, and the chaplain. Last, he alleges that he has, at times, been double-celled in cells that are too small for even one inmate.

Collectively, the Plaintiffs argue that they and the class they seek to represent are subjected to disproportionately harsh and punitive practices of "extreme isolation," which Plaintiffs say is applied arbitrarily, capriciously, and overzealously. The conditions shared by the purported class include substandard cell conditions, social isolation, and deprivation of basic needs including exercise, nutrition, educational opportunities, and access to good hygiene.

## STANDARD OF REVIEW

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546, 127 S.Ct. 1955, 1959 (2007).

**DISCUSSION**

**I. Eighth Amendment Claim**

*A. Extreme Isolation*

Plaintiffs allege that the "extreme isolation" and "disproportionate punishments for violations of prison rules" they experienced violate the Eighth Amendment's prohibition of cruel and unusual punishment. A finding of an Eighth Amendment violation is proper when two requirements are met: first, the alleged violation must be objectively "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991), meaning it "must result in the denial of 'the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)). Second, the defendant must have acted with a "sufficiently culpable state of mind." *Id*. (citing *Wilson*, *supra*, 501 U.S., at 298, 111 S.Ct., at 2324). Because Defendant has not responded to Plaintiff's assertion that Defendant acted with a sufficiently culpable state of mind, I will only address the first prong of this analysis.

Plaintiffs assert that their experience of extreme isolation is objectively and sufficiently serious to satisfy the first prong of the Eighth Amendment analysis. In *Wilkinson v. Austin*, 545 U.S. 209, 214, 125 S.Ct. 2384, 2389 (2005), the Supreme Court identified several characteristics of the Ohio State Penitentiary ("OSP") that made its conditions "synonymous with extreme isolation":

> In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls . . . . *OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.*

*Id.* (emphasis added). Although "extreme isolation" is a somewhat vaguely defined term, *Wilkinson* makes clear that the near-complete deprivation of environmental or sensory stimuli or human contact may form the basis of a proper Eighth Amendment claim. Here, however, Plaintiffs fail to allege facts demonstrating that they were held in conditions that amount to "extreme isolation," even if the phrase is interpreted liberally. All three Plaintiffs in the instant case were placed in a more restrictive environment when they were moved to segregation, but there is no indication that they experienced anything like the near-complete deprivation described in *Wilkinson*. Plaintiffs do not allege that their cells are more restrictive than those outside of segregation housing (e.g., they do not allege that their cell doors prevent communication with inmates in adjacent cells), nor that the conditions placed on visitors are drastically different from the visiting privileges of inmates in general population. Moreover, Coleman and Fillmore admit that they shared their cells with other inmates, which undercuts any argument that these particular plaintiffs experienced sustained and near-complete deprivation of human contact.

The third Plaintiff, Jones, does not allege sufficient facts about the severity of his isolation. While a plaintiff need not prove his case in the complaint, it is not sufficient to offer mere "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Here, the Complaint does not mention whether or not Jones had cellmates during his segregation sentence. Likewise, it fails to provide testable, factual assertions about Jones' level of isolation aside from conclusory statements about his "continued, never-ending isolation."

*B. Disproportionate Punishment*

Plaintiffs also assert that each of them experienced "disproportionate punishments for violations of prison rules" that are objectively and sufficiently serious to satisfy the first prong of the Eighth Amendment analysis. To determine whether punishment is disproportionate, courts must consider "circumstances surrounding the segregation decision, including, first, the circumstances surrounding the offense, second, the prisoner's disciplinary record, and, third, the offense for which [the inmate] originally was incarcerated." *Maydun v. Franzen*, 704 F.2d 954, 961 (7th Cir. 1983). Here, Plaintiffs have each stated the circumstances surrounding the offenses for which they were placed in segregation, but none of the three included the offenses for which they were originally incarcerated, and Coleman fails to provide information on his disciplinary record. Thus, it is impossible for me to evaluate the validity of the disproportionate punishment claim as currently pled.

Because Plaintiffs have failed to sufficiently state a proper cruel and unusual punishment claim based on either "extreme isolation" or "disproportionate punishment," this claim is dismissed without prejudice.

**II. Fourteenth Amendment Claim**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). Plaintiffs allege that their protected liberty interest is in avoiding "extreme isolation," which, they claim, "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300. The Supreme Court has held that while "the Constitution itself does not give rise to

a liberty interest in avoiding transfer to more adverse conditions of confinement . . . a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Connor*." *Wilkinson*, 545 U.S. at 221-22 (citations omitted). The Court has also held that "the touchstone of the inquiry into the existence of a protected, state-created liberty interest . . . is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300).

The Seventh Circuit has interpreted these decisions as "establish[ing] that disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original). Thus, "a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Id*. at 697-98 (emphasis in original). In evaluating whether a liberty interest exists, "both the duration *and* the conditions of the segregation must be considered in the due process analysis." *Id.* at 698 (emphasis in original). As above, I will consider the Plaintiffs' claims separately.

In Coleman's case, his segregation sentence spanned six months (plus an additional two months for a separate offense) – a length of time that the Seventh Circuit has held is "not such an extreme term" and, by itself, does not trigger due process rights. *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995). Coleman's allegations regarding the conditions of his segregation also fail to trigger due process rights. He complains of the presence of insects, mice, and broken windows as well as a restriction on showers and the deprivation of his wheelchair and walking cane. These conditions, however, are not sufficiently harsh or atypical from ordinary prison life to give rise to constitutional due process concerns. For example, the Seventh Circuit has

previously held that 24-hour-a-day segregation for 70 days in a locked cell, with no access to prison programs or activities, and drastic reduction of exercise privileges were not "actionably different" conditions from those in the general population. *Lekas v. Briley*, 405 F.3d 602, 610-11 (7th Cir. 2005) (citing to *Williams v. Ramos*, 71 F.3d 1246 (7th Cir. 1995) and *Thomas v. Ramos*, 130 F.3d 754 (7th Cir. 1997)). Even allowing for the possibility that Coleman's conditions are worse than those described in *Lekas*, Coleman fails to provide the facts necessary to compare the conditions of his disciplinary segregation to those of inmates in the general population. Therefore, his due process claim is dismissed without prejudice.

Similarly, Fillmore and Jones fail to state proper due process claims. While their periods of segregation lasted longer than Coleman's -- fifteen years in Fillmore's case and over one year in Jones' case -- the living conditions they describe do not rise even to the level described in *Lekas*. Fillmore alleges drastic reduction of yard time, denial of library materials as well as other personal property, and complete denial of religious programs. Jones alleges decreased privileges and access to personal property, phones, recreation time, showers, and law library time. Both Plaintiffs do compare their conditions and restrictions with those of inmates not in administrative detention. For instance, Fillmore is allowed yard time twice each week for one to two hours, compared to the regular weekly five hours of exercise, and Jones is permitted, at most, four no-contact, pre-approved two-hour visits per month, compared to the regular six visits. But these conditions are similar to (if not slightly improved from) those described in *Lekas*, which the Seventh Circuit deemed "large indistinguishable from those [conditions] already found not to implicate a prisoner's remaining liberty interest." 405 F.3d at 613. Thus, both Fillmore and Jones' due process claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted, and all of Plaintiffs' claims are dismissed without prejudice.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: February 11, 2016